FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ MAY 06 2011
BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
THEIL T. STAPLETON,

                    Petitioner,

    - against -

HAROLD D. GRAHAM,

                    Respondent.

-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

09-CV-0382 (ENV) (LB)

**VITALIANO, D.J.**

    Pro se petitioner Theil T. Stapleton seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition was referred to Magistrate Judge Lois Bloom for a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b). Stapleton timely filed his objections to the R&R on November 4, 2010. Respondent has not filed a response. After careful consideration of Stapleton's objections, and for the reasons that follow, this Court adopts Judge Bloom's R&R in its entirety as the opinion of the Court.

## I.   BACKGROUND

    On August 13, 2002, three men entered the Queens County apartment of Miguel Lopez, where Lopez lived with his "common-law wife" Ligia Munoz and daughter Kemberly Lopez. One of the men struck Miguel Lopez several times in the head with a gun, bound his feet and hands, covered his mouth with tape, wrapped a cord around his neck, and demanded money and drugs. The three men then bound the two females in separate rooms and returned a naked Munoz to the room where Lopez was being held. They ransacked the apartment, and, after about an hour, they left with some of Lopez's clothing, jewelry, and his Mazda Millennium

1

automobile. When Lopez eventually freed himself and his family, he went downstairs where his landlady's daughter, Vanessa Castaneda, called the police.

A week later, Castaneda told Lopez that she had seen someone driving his car around the neighborhood. Lopez informed the police, and, in response, Detective Toro and his partner canvassed the area with Lopez looking for the vehicle. Lopez eventually spotted his car being driven by petitioner. When Stapleton exited the vehicle, Lopez identified him as one of the assailants, noting that petitioner was wearing a pair of Lopez's pants stolen during the robbery. Stapleton was arrested and made written and oral statements to Toro claiming that Castaneda had set up the robbery along with her boyfriend, Carlos Rivera. A lineup was held at which Munoz identified petitioner. Ten days after Stapleton's arrest, Castaneda was also arrested, and she admitted to setting up the robbery with Rivera. Toro showed Castaneda a photo of petitioner, and she identified him as one of the participants in the robbery.

Prior to trial, petitioner and the third robber, Daniel Alvarez, moved to suppress the pretrial and prospective in-court identifications by Lopez, Munoz, and Castaneda. Petitioner also sought to suppress, on unlawful search and seizure grounds, the seizure of the pants and car, and the statements he made to the police at the time of his arrest. Following a suppression hearing, Supreme Court, Queens County ruled that there was no basis to suppress the pants, car, or the statements made to police. The court, however, found that Castaneda's photo identification of petitioner was unduly suggestive, and it ordered an independent source hearing to determine whether Castaneda's prospective in-court identification should be suppressed. Following the hearing, the court denied petitioner's motion to suppress Castaneda's in-court identification, determining that Castaneda would have been able to identify petitioner had she never been shown the suggestive photo array.

2

Stapleton proceeded to trial and near the end of jury selection, petitioner's counsel apprised the court that petitioner had overheard one of the prospective jurors make a statement to two other jurors indicating his prejudice against him. The court questioned the three jurors and all three denied hearing or speaking such remarks. As such, the court denied petitioner's request to excuse the allegedly biased juror from the panel for cause. In the end, petitioner was convicted of two counts of robbery in the first degree, two counts of robbery in the second degree, two counts of burglary in the first degree, three counts of unlawful imprisonment in the first degree, endangering the welfare of a child, criminal possession of stolen property in the fourth degree, and unauthorized use of a vehicle in the third degree. He was acquitted on the charge of criminal possession of stolen property in the fifth degree, which concerned the alleged theft of Lopez's pants. On March 11, 2004, Stapleton was sentenced as a persistent felony offender. He received a concurrent indefinite term of imprisonment of 25 years to life for the first degree robbery convictions and one of the burglary in the first degree convictions, a consecutive indefinite term of imprisonment of 20 years to life on the other count of burglary in the first degree, a concurrent indefinite term of 16 years to life on each second degree robbery count, a determinate concurrent one-year term of imprisonment for the child endangerment and unauthorized use convictions, and two to four years for the unlawful imprisonment and stolen property charges.

On direct appeal, petitioner's appellate counsel argued that: (1) the trial court erred in its Sandoval[1] ruling, depriving petitioner of his due process rights; (2) the trial court's erroneous admission of evidence relating to Lopez's out-of-court identification of petitioner violated

---

[1] A hearing is held pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), to determine the extent to which the accused, should he decide to testify, could be cross-examined regarding prior convictions and bad acts bearing on his credibility, veracity, or honesty.

petitioner's due process rights; and (3) the sentencing court wrongfully imposed consecutive sentences for the two first degree burglary offenses. Petitioner then filed a pro se supplemental brief in which he argued that: (1) the lower court erred when it ruled that the police had probable cause to arrest him; (2) the identification procedures surrounding Lopez's out-of-court identification and Castaneda's photo identification were unduly suggestive; (3) an evidentiary hearing should have been held in light of Castaneda's false testimony and because the trial court failed to inform the jury that Castaneda was an accomplice; (4) the trial court should have excused a biased juror; and (5) the prosecutor failed to establish petitioner's guilt beyond a reasonable doubt. On June 19, 2007, the Appellate Division, Second Department issued its decision affirming petitioner's conviction. People v. Stapleton, 41 A.D.3d 744, 840 N.Y.S.2d 606 (2d Dept. 2007). The court expressly affirmed the trial court's findings pertaining to its Sandoval ruling, its admission of the Toro's third-party testimony confirming Lopez's identification of petitioner, and its finding that Castaneda's identification using the single photo was merely confirmatory. Id. at 744-45. The Court did, however, modify petitioner's sentence by directing that the consecutive sentences run concurrently. Id. at 745. Petitioner's remaining claims were found to be "without merit." Id. By order dated September 17, 2007, petitioner's application for leave to appeal to the Court of Appeals was denied, and, on November 20, 2007, petitioner's motion for reconsideration was denied.

On May 7, 2008, proceeding pro se, petitioner filed his first writ of error coram nobis motion, arguing that appellate counsel provided ineffective assistance by failing to argue that petitioner was denied effective assistance of trial counsel because: (1) trial counsel failed to challenge the constitutionality of petitioner's prior convictions, and (2) trial counsel failed to argue that petitioner's sentencing as a persistent violent felony offender violated Apprendi v.

New Jersey, 530 U.S. 466 (2000) and its progeny. On September 9, 2008, the Appellate Division denied petitioner coram nobis relief, finding that petitioner had "failed to establish that he was denied the effective assistance of appellate counsel." Petitioner did not appeal this decision.

On January 27, 2009, petitioner filed the instant pro se habeas petition claiming that: (1) the lower court erred when it ruled that the police had probable cause to arrest him; (2) the identification procedures were unduly suggestive; (3) an evidentiary hearing should be held in light of Castaneda's false testimony and because the trial court failed to inform the jury that Castaneda was an accomplice; (4) the trial court should have excused a biased juror; and (5) the prosecutor failed to establish petitioner's guilt beyond a reasonable doubt. Petitioner also filed a letter requesting a stay to return to state court to exhaust unidentified state law claims.

After the case was referred to Judge Bloom, petitioner filed a second motion for a writ of error coram nobis on March 19, 2009. Stapleton argued that appellate counsel provided ineffective assistance for failing to argue that trial counsel was ineffective for a host of reasons, including that trial counsel did not: (1) seek to sever petitioner's trial from that of co-defendant Rivera; (2) object to the admission of statements Castaneda made to the police; (3) object to the trial court's administration of an incomplete oath to jurors during voir dire; and (4) object to the jury charge on the issue of recent and exclusive possession of stolen property. On August 11, 2009, the Appellate Division denied this writ, finding again that petitioner "failed to establish that he was denied effective assistance of appellate counsel." Petitioner's appeal was denied.

On September 22, 2010, Judge Bloom issued her R&R, recommending that the petition be dismissed. On November 4, 2010, petitioner filed timely objections.

## II.  DISCUSSION

### A.  Standard of Review

In reviewing the Report and Recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  A district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).

### B.  The Antiterrorism and Death Penalty Act of 1996 ("AEDPA")

The Supreme Court has made it clear that "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786 (2011).  "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781 (1979) (Stevens, J., concurring in judgment)).  Pursuant to AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., for the Court, Part II) (internal citation omitted).  Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the

prisoner's case." Id. at 413. A state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). Finally, only claims adjudicated on the merits in state court are subject to AEDPA's deferential standard. See Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)).[2]

## C. Motion to Stay

Before proceeding to the merits of Stapleton's objections, the Court will first address petitioner's motion to stay. Shortly after the second writ of error coram nobis was filed, petitioner moved to stay the instant habeas petition so that he could return to state court and exhaust new ineffective assistance of appellate counsel claims advanced in his second application for a writ of error coram nobis that was then pending before the Appellate Division. As noted above, the Appellate Division denied that second writ application. Accordingly, since petitioner has now exhausted the additional claims, his request to stay the instant petition is denied as moot.

## D. Petitioner's Objections

Stapleton's objections—which are to be liberally construed since he is proceeding pro se—challenge Judge Bloom's recommendations to deny each of his claims for habeas relief.

---

[2] "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Cullen v. Pinholster, 131 S. Ct. 1388, 1401 (2011). Under AEDPA's deferential standard of review, "'[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id. (quoting Williams, 529 U.S.at 437). "Determination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

1. Fourth Amendment Claim

Petitioner argues that his Fourth Amendment rights were violated when he was arrested without probable cause. He alleges that he "was arrested seven days [after] and eight miles from the scene of the alleged incident," and that "there was no criminality present and . . . no reasonable suspicion for just cause." Judge Bloom rejected this claim, noting that petitioner had a full and fair opportunity to litigate this Fourth Amendment claim in state court. A federal court's authority to review a Fourth Amendment claim in a § 2254 application is severely limited. In Stone v. Powell, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." See Palacios v. Burge, 589 F.3d 556, 561 (2d Cir. 2009) (noting that Stone "bars us from considering Fourth Amendment challenges raised in a petitioner's petition for habeas relief"); Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) (explaining that Stone's "bar to federal habeas review of Fourth Amendment claims is permanent and incurable" unless the state fails to provide "a full and fair opportunity to litigate the claim"). To demonstrate the requisite lack of opportunity, a petitioner must show that the state either (a) "has provided no corrective procedures at all to redress the alleged Fourth Amendment violations", or (b) "has provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); see Grayson v. Artus, 08-CV-0493, 2010 U.S. Dist. LEXIS 7870, at **17-18 (E.D.N.Y. Feb. 1, 2010); Daniels v. New York, 07-CV-0448, 2009 U.S. Dist. LEXIS 74889, at *34 (E.D.N.Y. Aug. 21, 2009).

Neither situation exists here. As an initial matter, "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. . . . as being facially adequate." Capellan, 975 F.2d at 70 n.1 (internal quotation marks and citations omitted); see Brewster v. New York, 08-CV-4480, 2010 U.S. Dist. LEXIS 4660, at *31 (E.D.N.Y. Jan. 21, 2010); Goodwin v. Duncan, 03-CV-0031, 2009 U.S. Dist. LEXIS 102964, at *15 (W.D.N.Y. Aug. 11, 2009). So, Stapleton fails on the first prong. Nor does he fare better on the next. Petitioner cannot demonstrate an "unconscionable breakdown", such as "the hearing judge fail[ing] to make a reasoned inquiry," Angeles v. Greiner, 267 F. Supp. 2d 410, 417 (E.D.N.Y. 2003), "yield[ing] to mob intimidation of the jury" or "not provid[ing] rational conditions for inquiry into federal-law . . . questions." Capellan, 975 F.2d at 70. On the contrary, petitioner took full advantage of the New York procedures, participating in a pre-trial Mapp/Huntley/Wade/Dunaway evidentiary hearing which included witness testimony and cross-examination. Petitioner also argued in his supplemental brief to the Second Department that the lower court erred when it ruled that the police had probable cause to arrest him. Those contentions were rejected when that court affirmed his conviction. Petitioner's "mere dissatisfaction or disagreement with the outcome of [his] suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred" in violation of his Fourth Amendment rights. Goodwin, 2009 U.S. Dist. LEXIS 102964, at **16-17 (citing Capellan, 975 F.2d at 71; Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

Judge Bloom's recommendation to reject petitioner's Fourth Amendment claim is therefore adopted. There can be no doubt that Stapleton had a full and fair opportunity to litigate his suppression claim in the New York courts; this Court is without authority to relitigate the issue on habeas review. See, e.g., Ramdeo v. Phillips, 04-CV-1157, 2007 U.S. Dist. LEXIS

9

49483, at **71-74 (E.D.N.Y. July 9, 2007) (denying habeas relief for alleged <u>Dunaway</u> violation since petitioner "failed to show a lack of State corrective procedures or a breakdown in the underlying process"); <u>Simpson v. West</u>, 05-CV-2279, 2006 U.S. Dist. LEXIS 31133, at **15-16 (E.D.N.Y. May 18, 2006) (denying habeas relief on <u>Stone v. Powell</u> grounds because "[p]etitioner had a full and fair opportunity to litigate this claim in the state court Dunaway/Huntley/Mapp hearing").

### 2. Lopez's Out-of-Court Identification

Stapleton next argues that the trial court should not have admitted Lopez's out-of-court identification of him. In his objection to Judge Bloom's R&R, Stapleton raises certain "new" facts that he did not include in his petition, but his claim is in fact exactly the same. There is nothing in the record to suggest that Lopez's identification of petitioner was impermissibly suggestive in light of the Supreme Court's analysis in <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S. Ct. 375 (1972). "It is the likelihood of misidentification," the Court held, "which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." <u>Biggers</u>, 409 U.S. at 198, 93 S. Ct. at 381-82 (citing <u>Simmons v. United States</u>, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." <u>Id.</u>

Yet, as Judge Bloom points out in her R&R, even if Lopez's identification of Stapleton was somehow impermissibly suggestive, the next step is not suppression of the identification; it is to determine whether, "under the 'totality of the circumstances[,]' the identification was reliable even though the confrontation procedure was suggestive." <u>Id.</u> at 199, 93 S. Ct. at 382;

see also Abdur Raheem v. Kelly, 257 F.3d 122, 133 (2d. Cir. 2001) ("In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." (citations omitted)). As the Supreme Court has established, the factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382.

Lopez testified that he had the opportunity to view Stapleton during the one hour-long robbery. In his objections, petitioner responds that Lopez could not have clearly seen his face during the robbery because Lopez was choked into unconsciousness. He further argues that Lopez's only reason for identifying him was the stolen pair of pants he was wearing during the initial identification. The objection is rooted in fantasy. Acknowledging the attack on him, Lopez testified that he had sufficient time to view Stapleton at close range and in good light. His degree of awareness as to what was happening, it is more than reasonable to infer, would certainly have been high, especially since his wife and young daughter were also in the apartment. Following the attack, he was also able to free himself to seek help. In short, even though Lopez may have lost consciousness at some point during the robbery, the record reveals no basis to find that it affected his opportunity to observe his attackers and identify them. Furthermore, only seven days had elapsed between the time of the robbery and the identification, thus bolstering its reliability.

But even if Lopez's identification was somehow constitutionally infirm, as Judge Bloom correctly noted, the Court must next evaluate whether such an error had a substantial and

injurious effect on the outcome of the trial. See Fry v. Pliler, 551 U.S. 112,121-22, 127 S. Ct. 2321, 2328 (2007). The Court agrees that in light of the overwhelming evidence against petitioner, even if the admission of Lopez's testimony was an error—which, to be clear, is not the case—it would be harmless at best. And, needless to say, the state court's conclusion to the same effect would be entitled to AEDPA deference, closing the door on this claim. Judge Bloom's R&R is therefore adopted on this issue as well.

### 3. Castaneda's Testimony

Stapleton's petition contends that the trial court's failure to instruct the jury that Castaneda was an accomplice and had a cooperation agreement with the prosecution violated his due process rights. In his objections to Judge Bloom's R&R, Stapleton also raises a number of new but related arguments. He first contends that Castaneda was coerced by the police into testifying, hence her "testimony was made against penal interest . . . ." He next claims that Castaneda should not have been allowed to testify because she received "a substantial reduction in [prison] time" in exchange for her cooperation. Finally, Stapleton argues that Castaneda's tip to the police—given through Lopez—should have been corroborated. He asserts that the combination of these "errors" during his trial violated his constitutional rights. But, claims of error in the state court evidentiary rulings regarding Castaneda's testimony are not cognizable on federal habeas review as "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Therefore, the Court may only determine whether the trial court's rulings deprived Stapleton of the fair trial guaranteed to him under the Sixth Amendment, and, only if he presented and exhausted those federal claims in state court. As Judge Bloom concluded, petitioner's argument fails.

12

To begin, the majority of petitioner's allegations find no support in the record. Stapleton argues that his due process rights were violated because the trial court failed to determine whether Castaneda was an accomplice as a matter of law and to instruct the jury that she was an accomplice. However, in its charge, the court explicitly instructed the jury that Castaneda was an accomplice as a matter of law. Petitioner also claims that Castaneda's cooperation agreement was not disclosed to the jury. Yet, again, during direct examination, the prosecutor questioned Castaneda about her cooperation agreement and its implications regarding leniency. With or without further instruction from the court, this challenge is not colorable.

The rest of petitioner's arguments are simply not cognizable federal claims. Stapleton's assertion that Castaneda's testimony was not corroborated is based entirely on state law. In New York, "a defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law, § 60.22(1) (McKinney 2003). However, there is no comparable protection in federal law. In fact, under federal law "[a] conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." United States v. Gordon, 987 F.2d 902, 906 (2d Cir. 1993). Then, of course, there is the sheer silliness of the argument since Lopez gave an eye-witness account corroborating the essence of Castaneda's testimony.[3] In sum, there is absolutely nothing in the record to support a finding that Stapleton was denied a fair trial. Judge Bloom's R&R on this point is therefore also adopted and Stapleton's arguments are rejected.

---

[3] Stapleton's related arguments in his objections that Castaneda was coerced by the police into testifying, that she should not have been permitted to testify because of her beneficial cooperation agreement, and that her tip should have been corroborated, all similarly do not present cognizable federal claims.

## 4. Sufficiency of the Evidence

Petitioner also argues that the evidence at trial was legally insufficient to support the verdict. Again, though, Stapleton has failed to show that the challenged state court determinations were contrary to, or an unreasonable application of, Supreme Court precedent, and specifically, the standard for insufficiency of evidence announced in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S. Ct. 2781 (1979). In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution," and the applicant is entitled to habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence adduced at trial. <u>Flowers v. Fisher</u>, 296 F. App'x 208, 210 (2d Cir. 2008) (citing <u>Jackson</u>, 443 U.S. at 326, 99 S. Ct. at 2791-93). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. <u>Einaugler v. Supreme Court</u>, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). Additionally, "[w]hen considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotations and citations omitted). As discussed at length in Judge Bloom's well-reasoned R&R, a rational jury could have found beyond a reasonable doubt that Stapleton was guilty of first degree robbery, first degree burglary, and first degree unlawful imprisonment.

In his objections, Stapleton points out that he was never convicted of a charge for possession of a shot-gun and that such a finding was an essential element of the crimes for which he was charged and convicted. He argues that since the shot-gun used in the robbery was never recovered, the People failed to prove that he used a dangerous weapon, which specifically is an

element of the crimes of first degree robbery and burglary. Judge Bloom's R&R explicitly, and correctly, addressed this argument, finding that the cord that was used to strangle Lopez was considered a dangerous weapon, making the gun irrelevant to the crimes charged. Since Stapleton's objections to the R&R merely restate arguments made in his initial habeas papers, the Court has nothing material to add to Judge Bloom's analysis on this issue. The objection is ovveruled.

Regarding the conviction for unlawful imprisonment and endangering the welfare of a child, petitioner argues that, "with the identification of petitioner being problematic, [the court] was required to hear testimony from the other alleged victims in the crime," and a missing witness charge should have been given. Again, this issue was raised in identical fashion in Stapleton's petition and addressed in detail by Judge Bloom. New York Penal Law § 135.10 states that "[a] person is guilty of unlawful imprisonment in the first degree when he restrains another person under circumstances which expose the latter to a risk of serious physical injury." New York Penal Law § 260.10 further states that "[a] person is guilty of endangering the welfare of a child when . . . [he] knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old . . . ." Lopez testified that petitioner and his accomplices bound Munoz's hands and feet and threw her on the bed. He also testified that they similarly restrained Kemberly, who was 11 years old. Munoz and Kemberly were therefore not required to testify at trial in order to sustain a conviction. Relatedly, regarding Stapleton's claim that a missing witness charge should have been given, the Court finds that one was simply not warranted. Moreover, nothing in the record suggests that such a charge was requested at any point during trial, as the Appellate Division found on direct appeal. See Stapleton, 41 A.D.3d at 745. Whether or not exhausted, either under state or federal constitutional law, the argument is

meritless.

Petitioner also objects that Judge Bloom ignored the fact that he was acquitted of the charge of possession of stolen property (regarding Lopez's pants). The crux of his argument is that a finding that he had stolen the pants was essential to the verdict on all the other counts. He is flat wrong. There are, of course, distinct elements to each of the crimes charged, but none of the others were reliant on a finding that Stapleton was guilty of the charge of possession of stolen property. That he was acquitted on that count is irrelevant to the verdict on the other counts. There being no evidence of Stapleton's actual innocence, this legal sufficiency claim is empty and Judge Bloom's recommendation with respect to the sufficiency of the evidence is adopted.

### 5. Fair and Impartial Jury

Stapleton claims that during voir dire, he overheard three potential jurors discussing his guilt and one of those jurors was ultimately selected for the trial. He contends that permitting this biased juror to serve was a violation of his Sixth Amendment right to an impartial jury. The Sixth Amendment "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961). Nonetheless, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . [It] means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 946 (1982). Moreover, "in each case a broad discretion and duty reside in the [trial] court to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality . . . ." Frazier v. United States, 335 U.S. 497, 511, 69 S. Ct. 201, 209 (1948). A habeas court may only overturn a finding of impartiality in

extreme cases of "manifest error." Patton v. Yount, 467 U.S. 1025, 1031, 104 S. Ct. 2885, 2889 (1984) (internal citations omitted).

Judge Bloom explained well in her R&R that after the issue was raised, the trial judge questioned the jurors and court officers who were present during voir dire, and had the officers ask potential jurors if they had heard the comments that Stapleton complained of. The officers and the jurors all denied hearing any such comments. Surely, this does not come close to constituting "manifest error." His objection points to nothing Judge Bloom overlooked, nor can the Court find any basis for relief upon its de novo review. Consequently, the Court adopts Judge Bloom's finding on this issue. There is no basis whatsoever to support Stapleton's claim that he did not receive a fair trial by impartial jury as guaranteed by the Sixth Amendment.

## E. New Claims and Arguments

Stapleton raises new matters in his objections to Judge Bloom's R&R that were not raised in his original petition. As a preliminary matter, "a petitioner is not permitted to raise an objection to a magistrate judge's report that was not raised in his original petition." Edwards v. Fischer, 414 F. Supp. 2d 342, 352 (S.D.N.Y. Feb. 7, 2006) (internal citations omitted). Nonetheless, courts in this circuit typically review such objections on the merits, and the Court will therefore follow that practice regarding petitioner's new claims. See Edwards, 414 F. Supp. 2d at 352; Hoover v. Senkowski, 00-CV-2662, 2003 U.S. Dist. LEXIS 26744, at **6-9 (E.D.N.Y. May 27, 2003).[4]

### 1. Castaneda's Identification

Stapleton attacks Castaneda's in-court identification as tainted in light of her prior suggestive photo identification. This claim was not raised in his original habeas petition, but it

---

[4] This, obviously, does not absolve noncompliance with AEDPA. New claims that were not exhausted in state proceedings at least are still forfeited.

was raised in petitioner's pro se supplemental brief to the Appellate Division. Courts look to the "totality of the circumstances" to determine whether an identification was impermissibly suggestive and deprived a petitioner of his right to a fair trial. Manson v. Brathwaite, 432 U.S. 98, 97 S. Ct. 2243 (1977). This claim is akin to petitioner's assault on Lopez's identification of him. Expanding on those earlier considerations, when the admissibility of a witness's pre-trial identification is questioned, it calls for "one-step or two-step inquiry." United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990). "The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification." Id. If the procedures were impermissibly suggestive, "the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." Id.

After Castaneda was arrested, she was shown a single photograph of Stapleton, which she identified as that of an accomplice. However, during a pre-trial suppression hearing, the trial court found that this photo identification was unduly suggestive, thereby satisfying the first prong of a constitutional challenge. The court then ordered an independent source hearing to determine whether her prospective in-court identification should also be suppressed. Following the independent source hearing, the trial court concluded that "Castaneda would have been able to identify [petitioner] had the questioned photographic identification never taken place, and that the photo identification did not and [would] not influence any subsequent identification testimony." On appeal, the Appellate Division affirmed this decision, holding that "[t]he hearing court's finding that a witness was sufficiently familiar with the defendant's face to render a

suggestive photographic procedure employed by the police merely confirmatory was supported by the evidence." Based on that record evidence, there is no basis for the Court to find that the Appellate Division's rejection of this claim, was contrary to, or an unreasonable application of, the Sixth Amendment and federal law. The hearing court correctly explored Castaneda's prior relationship with petitioner and determined that it provided an adequate basis for her in-court identification that was independent of the suggestive photo identification. Powerfully, the Supreme Court recently emphasized that AEDPA "preserves authority to issue the writ [of habeas corpus] in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Harrington, 562 U.S. at ___, 131 S. Ct. at 786. Here, there is ample evidence supporting the state court's decision, and, as such, a writ may not issue on this ground.

### 2. Ineffective Assistance of Trial Counsel

In his objections, Stapleton also claims now but did not argue before Judge Bloom, that he was denied effective assistance of trial counsel. Petitioner alleges that his trial counsel committed a number of errors at trial: (1) that counsel failed to argue that the police lacked probable cause when they arrested him resulting in the unlawful admission of the evidence that flowed from the arrest; (2) that counsel failed to question the truthfulness of Detective Toro's testimony and such a tactic would have bolstered the defense by impeaching an important witness for the prosecution; and (3) that counsel failed to object to the admission of Lopez's out-of-court identification and Toro's related testimony.

As a threshold matter, the issue of ineffective assistance of trial counsel was not raised on direct appeal to the Appellate Division. In neither the brief filed by appellate counsel nor the supplemental pro se brief filed by Stapleton himself, was the issue presented to the Appellate

Division. Because it had not been so alerted by petitioner, the Appellate Division had neither reason nor "fair opportunity" to consider the claim. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999); see also Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971) (noting the policy of federal-state comity, which is "an accommodation of our federal system designed to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights" (internal quotation marks and citations omitted)); Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (stating, in a case concerning how raising a state evidentiary claim was insufficient to raise a federal due process claim, that, in determining whether a federal claim has been fairly presented, the focus should be on the degree of similarity between claims before the state court and before the federal court (citation omitted)). Because the Appellate Division did not have a fair opportunity to consider Stapleton's claim for ineffective assistance of trial counsel, this claim is, indeed, unexhausted at the state appellate level. See Baldwin, 541 U.S. at 33, 124 S. Ct. at 1351-52; Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887, 888 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6-8, 103 S. Ct. 276, 277-78 (1982) (per curiam); Petrucelli v. Coombe, 735 F.2d 684, 690 (2d Cir. 1984); see also 28 U.S.C. § 2254(b). As such, Stapleton's arguments in his objections to Judge Bloom's R&R are unsupportable since they present issues not amenable to federal habeas review.

Assuming, arguendo, that petitioner's ineffective assistance of trial counsel claim was fairly presented and ripe for habeas determination on the merits, it fails nonetheless. The Supreme Court announced the constitutional standard for evaluating ineffective assistance of counsel claims in Strickland v. Washington, where it held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under Strickland, to establish ineffective assistance of counsel, a habeas petitioner

must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (internal quotation marks omitted)).

To establish the first prong, a habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (internal quotation marks omitted), with a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Here, Stapleton makes no such showing. His first argument that counsel failed to argue that the police lacked probable cause when they arrested him is actually contradicted in the record. As discussed above, a pre-trial suppression hearing was in fact held and certain evidence suppressed.

His third argument is similarly at odds with the record. Stapleton contends that counsel should have, but did not, object to the admission of the out-of-court identification by Lopez. Again, trial counsel moved to suppress Lopez's identification.

Continuing on to Stapleton's remaining contention, the Court addresses his argument that counsel failed to adequately question the truthfulness of Detective Toro's testimony, which would have impeached an important prosecution witness. On this path, Stapleton attacks trial counsel's decisions regarding cross-examination of a witness, which are strategic decisions entitled to a high level of deference. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1983) ("The decision whether to call any witnesses on behalf of the defendant, and if so

which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial . . . . Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature.") The Court will not second guess such decisions, particularly when nothing suggests that they were imprudent or would have changed the outcome of the case.

Even if petitioner's claims survived the first prong of Strickland, they would fail under the prejudice prong. To establish the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Because the evidence is so heavily weighed against petitioner, he is unable to make the showing required under Strickland. Consequently, a writ may not issue on this ground either.

### 3. Ineffective Assistance of Appellate Counsel

Stapleton also claims that he was denied effective assistance of appellate counsel. In two motions for writs of coram nobis, petitioner argued that he received ineffective assistance of appellate counsel, and, on both occasions, the Appellate Division denied relief. Petitioner's current averment identifies specific instances where he claims appellate counsel failed to argue a cognizable claim for ineffective assistance of trial counsel. First, Stapleton contends that, on direct appeal, appellate counsel should have raised an ineffective assistance of trial counsel claim because trial counsel failed to request a jury trial regarding his persistent violent felony offender status. Second, he notes that appellate counsel failed to raise a meritorious issue of ineffective assistance for trial counsel's failure to argue at sentencing that he was entitled to a hearing to challenge his 1989 conviction for criminal possession of a weapon in the third degree. Third, he

contends that appellate counsel erred by not arguing on direct appeal that trial counsel should have moved for a separate trial under New York Criminal Procedure Law §200.40.

As a threshold matter, not all of these new claims are properly before the Court. The first two arguments were raised in petitioner's first writ of coram nobis motion, which was denied on September 9, 2008 by the Appellate Division, when it found that Stapleton "failed to establish that he was denied the effective assistance of appellate counsel." People v. Stapleton, 54 A.D.3d 782; 862 N.Y.S.2d 914 (2d Dept. 2008). But Stapleton did not appeal this decision. It is well-settled that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). "To achieve exhaustion, the factual and legal predicate for each claim must be fairly presented to the highest available state court." Quintana v. McCoy, 03 Civ. 5747, 2004 U.S. Dist. LEXIS 24684, at *24 (S.D.N.Y. Nov. 18, 2004) (citing Daye v. Attorney General of the State of New York, 696 F.2d 186, 191 (2d Cir. 1982)). After the Appellate Division ruled on his coram nobis application, Stapleton should have applied for leave to appeal the adverse ruling to the Court of Appeals. Having failed to do so—and since any attempt to do so now would be procedurally barred[5]—his claim for ineffective assistance of appellate counsel on these grounds is unexhausted. His third claim, however, that appellate counsel erred by not arguing on direct appeal that trial counsel should have moved to sever his trial from that of co-defendant Carlos Rivera, was exhausted. This argument was raised in Stapleton's second motion for a writ of coram nobis, which was denied by the Appellate Division on August 11, 2009. People v. Stapleton, 65 A.D.3d 597, 883 N.Y.S.2d 713 (2d Dept. 2009). But this time, Stapleton did

---

[5] In New York, a party seeking leave to appeal to the Court of Appeals must do so within 30 days of having been served with the lower court's ruling. CPL § 460.10(5).

appeal the denial; the Court of Appeals denied leave on November 12, 2009. People v. Stapleton, 13 N.Y.3d 863 (2009).

Setting aside the fact of claim forfeiture and assuming exhaustion of all three claims, his ineffective assistance of appellate counsel argument still fails. Ineffective assistance of appellate counsel claims are similarly evaluated under the Strickland framework. Mayo v. Henderson, 13 F.3d 528, 533 (2d. Cir. 1994) ("Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel."). The Supreme Court has made it clear that "judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Moreover, "[i]n attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Mayo, 13 F.3d at 533. Instead, in order to prevail on such claims, a petitioner must show that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313 (1983)).

All three of Stapleton's claims of deficient performance of trial counsel fall into the category of "weaker" issues that appellate counsel was well within his discretion to omit on appeal. First, trial counsel's decision not to request a jury trial regarding Stapleton's persistent violent felony offender status was strategically sound. Where an enhanced sentence is based

solely on a defendant's recidivism, he is not entitled to a jury trial on that issue. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Second, the record reveals that at sentencing, trial counsel in fact argued that Stapleton's 1989 conviction was not entered into knowingly or voluntarily and requested a hearing to challenge the constitutionality of the conviction. The court denied the relief sought. Consequently, there was no basis for appellate counsel to challenge trial counsel's performance on this point. Finally, there is absolutely nothing in the record to support a finding that petitioner was entitled to a separate trial or that there was any prejudice inherent in the joint trial that was ordered. In sum, these claims, to the extent they were non-frivolous, were surely long-shot claims that appellate counsel was not required to raise on appeal. The Court, therefore, declines to "second-guess [the] reasonable professional judgments" of appellate counsel, Jones, 463 U.S. at 754, and a writ may not issue on this ground even if the Court were permitted to consider all of them de novo on its habeas review.

### III.  CONCLUSION

For the foregoing reasons, upon de novo review, the Court finds Magistrate Judge Bloom's R&R to be correct, well-reasoned, and free of any clear error. The Court, therefore, adopts the R&R in its entirety, as supplemented by this Memorandum and Order, as the opinion of the Court. Additionally, regarding the new claims raised by petitioner in his objections to Judge Bloom's R&R, the Court finds that they are without merit. Stapleton's petition for a writ of habeas corpus is, accordingly, dismissed with prejudice and the writ is denied. Since Stapleton has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in

good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      May 5, 2011

ERIC N. VITALIANO
United States District Judge